WILLIAM H. PLYER, Appellant, *v.* GERMAN AMERICAN INSURANCE COMPANY of the City of New York, Respondent.

Where contradictory statements of a witness, made out of court, are proved for the purpose of impeachment, they are admissible and can properly be used only for that purpose, and only affect the testimony of the witness who made them. They are not evidence of facts stated therein, and do not affect the testimony of other witnesses who swear to the same facts as did the witness sought to be impeached.

(Argued May 9, 1890; decided June 10, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed a judgment in favor of defendant entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action upon a policy of insurance issued to plaintiff upon a dredge owned by him which was destroyed by fire.

The policy contained this clause : "It is understood that said vessel is in charge of a watchman." Defendant claimed that it was a condition precedent to a recovery that plaintiff should prove the vessel was in charge of a watchman.

The court here decide that conceding this to be so, the fact of the presence of a watchman was conclusively proved by disinterested witnesses who were not in any way contradicted,

and that the refusal of the trial court to so charge the jury was error.

After a discussion of this testimony, the opinion proceeds as follows:

"But there are some other facts which the defendant's counsel thinks are important and which will be now stated. Soon after the fire which destroyed the dredge, Mr. Stratton, in the interest of the defendant, came down to the place where the dredge had been lying when the fire broke out. He conversed with the men named respectively, McGinty, Brown and Runde, and reduced their statements to writing, and had them sign the same. These men then were or had been in the employment of Gregory when the fire occurred. According to the statements thus signed by them there was no watchman in charge of the vessel when it was burned, as Otley, the man who plaintiff claimed was the watchman, was referred to by them as being asleep in the house with them at the time when the fire was discovered.

"The defendant then took proceedings to have their testimony taken *de bene esse* before a referee, and on their examination before a referee in answer to questions put by plaintiff's counsel, they all swore distinctly to the presence of the watchman at the fire and to their first seeing him near it. McGinty in explanation of this contradiction between his prior statement to Stratton and his testimony thus taken, said he did not know the contents of the paper; Runde said he did not know whether he told the same story in the paper that he did on his (then) examination, but he meant to ; while Brown said he knew nothing of the contents of the paper signed by him except as it was read to him, and he did not think the paper as read to him was different from the facts as he stated them on the examination then had before the referee.

"The plaintiff upon the trial of the action, called the witnesses Joseph McGinty and Abraham Brown, and they swore to the presence of the watchman, and as Runde was not present at the trial, his testimony taken *de bene esse* at the instance of defendant, was put in evidence by the plaintiff. For the purpose of impeaching these three witnesses, the defendant's counsel offered their written statements signed by

them, and already referred to, showing contradictory state-
ments made by them to their evidence in court on the trial.
These statements were received and undoubtedly were properly
received for the purpose mentioned. I have now stated all
the evidence which was given upon the question of the watch-
man, when the plaintiff rested. The defendant produced no
evidence upon that point.

"We think that the written statements offered in evidence
by the defendant were admissible only for the purpose of
showing prior contradictory statements made out of court by
the witnesses named, and to that extent their statements fur-
nished ground for the contention that those witnesses who had
made the statements were so far impeached as to leave their
credibility a question for the jury. These written statements
were not, however, any evidence of the fact of the absence of
the watchman at the time of the fire. They did not consti-
tute even a suspicious circumstance so that it could be said
that the case was of so suspicious a nature that the uncontra-
dicted evidence of other and disinterested witnesses must
still be submitted to the jury to pass upon the credibility
of such witnessess. Their only effect was upon the testi-
mony of the witnesses who had made them, and they cast a
doubt on that evidence simply because the sworn and the
unsworn statements disagreed, and it was for the jury to
say whether sworn statement made in court was or was not
true. It might well be that it was, and the falsity might
rest with the unsworn document, or the explanation of the
witnesses might be taken as sufficient. This would be matter
for the jury to consider. All this, of course, is on the assump-
tion that there was no other evidence of the fact. The char-
acter of the other evidence, if any existed, would not, however,
be impeached or its weight lessened by these statements.
They formed not the slightest contradiction to the evidence
of the Gregorys or of Muller, nor did they constitute the
least ground for saying that the credibility of these last-
named witnesses had been in any degree assailed. If on the·
trial the witnesses, who made these written statements, had
said that there was no watchman present when the fire broke
out, or if they had given evidence of such facts, that an infer-

ence to that effect might be properly drawn from their evidence, then, of course, there would have been evidence in the case which affected the credibility of the other witnesses or at any rate contradicted them and the case on that point would, therefore, have to be left to the jury. But there is nothing of the kind here.

"What was done was no more than if witnesses had been called to swear they would not believe McGinty and his two companions under oath. That certainly would not affect the credibility of the other witnesses who were not impeached. It was simply one of the ways of impeaching these particular witnesses, and the impeachment had not the slightest effect upon the testimony of those witnesses for the plaintiff who stood entirely unimpeached and uncontradicted, either by witnesses or circumstances, and whose evidence was plausible, natural and probable, and not given by an interested witness. The cases cited by the counsel for the defendant to sustain his contention, viz.: *Elwood* v. *W. U. T. Co.* (45 N. Y. 553); *Gildersleeve* v. *Landon* (73 id. 609); *Koehler* v. *Adler* (78 id. 287); *Munoz* v. *Wilson* (111 id. 295), and cases therein cited, do not go far enough. There are no facts or circumstances proved here which bring the case within the rule permitting the credibility of witnesses who were uncontradicted by any other witness, to be passed upon by the jury because of a possible contradiction from circumstances proved in the case. None such existed here.

"Upon all the evidence in this case, we think it comes within the doctrine laid down in *Lomer* v. *Meeker* (25 N. Y. 361) and *Kelly* v. *Burroughs* (102 id. 93), and other kindred cases, and that the plaintiff was entitled to the charge he asked for. This leads to the reversal of the judgment and to the granting of a new trial, with costs to abide the event."

*F. C. Campbell* for appellant.

*William D. Murray* for respondent.

PECKHAM, J., reads for reversal and new trial.

All concur, except ANDREWS, EARL and FINCH, JJ., not voting.

Judgment reversed.